COPY TO CONFORM

1   Daniel E. Engel, SBN 167231
2   Email: dan@engellawfirm.com
   THE LAW OFFICE OF DANIEL E. ENGEL
3   18150 Archwood Street
   Reseda, CA 91335-5502
4   Tel:   (818) 345-2634
5   Fax:  (866) 535-1248

6
7   Matthew Butterick, SBN 250953
   Email: mb@buttericklaw.com
   BUTTERICK LAW CORPORATION
8   5419 Hollywood Boulevard, Suite C731
9   Los Angeles, CA 90027
   Tel:   (323) 544-1435
10   Fax:  (866) 801-117

11
   Attorneys for Plaintiff
12

BY _____

2008 AUG -8 PM 3:13

FILED

13      THE UNITED STATES DISTRICT COURT

14     FOR THE CENTRAL DISTRICT OF CALIFORNIA

15              WESTERN DIVISION

| 16 | | Case No. CV08-04731 AHM (FFMx) |
|----|---|---|
| 17 18 | | **FIRST AMENDED COMPLAINT FOR VIOLATION OF CAL. CIV.** |
| 19 | CLINT ARTHUR, individually and on behalf of a class of similarly situated persons, | **CODE § 1740; FRAUD; BREACH OF WARRANTY; UNJUST** |
| 20 | Plaintiff, | **ENRICHMENT; CAL. CIV. CODE § 1750; AND CAL. BUS. & PROF.** |
| 21 | vs. | **CODE § 17200** |
| 22 | | |
| 23 | LOUIS VUITTON NORTH AMERICA, INC., a Delaware | **CLASS ACTION** |
| 24 | corporation; and DOES 1 through 10, inclusive, | **DEMAND FOR JURY TRIAL** |
| 25 | Defendant. | Assigned to the Honorable A. Howard |
| 26 | | Matz, Courtroom 14 |
| 27 | | Action filed: July 22, 2008 |
| 28 | | |

— 1 —

Plaintiff alleges:

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction over this action because it is a civil class action; the aggregate amount in controversy exceeds $5 million exclusive of interest and costs; and diversity of citizenship exists between Plaintiff and the primary defendant. 28 U.S.C. § 1332(d)(2) and (d)(2)(A).

2.      Venue is proper in this district because most of the events giving rise to the claim occurred here. 28 U.S.C. § 1391(b)(2).

## PARTIES

3.      Plaintiff Clint Arthur is an avid art collector of modern and contemporary art. Plaintiff does, and at all times herein mentioned did, maintain a residence in Los Angeles County, California.

4.      Defendant Louis Vuitton North America, Inc. ("Louis Vuitton") is a corporation organized under the laws of Delaware with its principal place of business in New York. Louis Vuitton makes and sells luxury goods, including luggage and handbags. Louis Vuitton is a subsidiary of LVMH Moet Hennessy Louis Vuitton S.A., a French luxury-products conglomerate that had first-quarter revenue in 2008 of over €4 billion ($6.13 billion).

5.      Defendant Does 1 through 10 ("Does") are sued in this Complaint under fictitious names. Their true names and capacities are currently unknown to Plaintiff. When Plaintiff ascertains their true names and capacities, Plaintiff will amend this Complaint with their true names and capacities. Plaintiff alleges on information and belief that each of the Does is responsible in some manner for the wrongful acts alleged in this Complaint, and that the Does proximately caused Plaintiff's damages.

— 2 —

6.     Defendants Louis Vuitton and Does, and each of them, are responsible for the acts and omissions of the others and are parties acting in active concert and participation with each other. These parties have acted, and continue to act, in concert with each other, and have aided and abetted each other, cooperated with each other in the planning of, participation in, and facilitation of, the marketing, advertising and sale of its products and services. Defendants Louis Vuitton and Does are collectively referred to as "Defendant".

## FACTS COMMON TO ALL CLAIMS

7.     This action arises from Louis Vuitton's successful scheme to transform 100 square yards of Louis Vuitton handbag fabric into $4 million of high-end fine art prints by selling them from the floor of a major art museum with false certificates of authenticity.

8.     Louis Vuitton enjoys an ongoing commercial collaboration with celebrated pop artist Takashi Murakami ("Murakami"). In 2002, Louis Vuitton hired Murakami to create textile patterns based on the Louis Vuitton logo. Louis Vuitton made bags, luggage and other merchandise with these patterns, which were wildly successful.

9.     From October 29, 2007 to February 11, 2008, the Los Angeles Museum of Contemporary Art ("MOCA") hosted the debut of "©MURAKAMI", a warehouse-sized retrospective of Murakami's work (the "Exhibition"). Works featured at the Exhibition ranged from unique pieces made by Murakami personally to Murakami-branded merchandise mass-produced by his art production company Kaikai Kiki.

10.     The Exhibition also featured a Louis Vuitton boutique on the floor of the museum (the "Boutique"). The Boutique, conceived as an integral part of the Exhibition, showcased Murakami's work for Louis Vuitton. The

— 3 —

1  Boutique looked like any other Louis Vuitton store, with uniformed
2  employees and its own cash registers. At the Boutique, Louis Vuitton sold the
3  same Murakami-patterned merchandise offered at its other stores.

4      11.    Louis Vuitton also acted as art dealer for five series of what
5  purported to be genuine limited-edition Murakami prints based on the textile
6  patterns Murakami created for Louis Vuitton (the "Prints"). Louis Vuitton
7  displayed the Prints at the Boutique similarly to other art at the Exhibition.



18     12.    This photo illustrates the relationship between the Boutique and
19  the Exhibition. The photo shows the inside of the Boutique, looking out into
20  the Exhibition. The Louis Vuitton bags and other merchandise were on
21  shelves and cases in the Boutique. The Prints were shown on the wall of the
22  Boutique. (The artwork on the wall at the right side of the photo was
23  represented to be an original Murakami painting with a value of $500,000,
24  but is not one of the Prints. The Prints were displayed in a similar manner on
25  another wall.) Another Murakami painting in the Exhibition is visible
26  through the doorway. The Boutique was intended to give visitors a sense of
27  Murakami's highly controversial tendency to blur the line between fine art
28  and mass-produced goods.

— 4 —

13.    The titles of the five series of Prints were:

    a.    "Monogram Mini Multicolore – white"

    b.    "Monogram Mini Multicolore – black"

    c.    "Monogram Multicolore – white"

    d.    "Monogram Multicolore – black"

    e.    "Monogram Cherry"

    (The Prints are reproduced in Exhibit A.)

14.    There were 100 prints in each series, for a total of 500 prints available. Louis Vuitton charged $6000 for the first 50 prints in each edition, and $10,000 for the second 50 prints—an average price of $8000, and a total retail value of $4 million.

15.    In December 2007, Plaintiff Clint Arthur made his first visit to the Exhibition.

16.    During that visit, Plaintiff visited the Boutique and the Prints caught his eye. Louis Vuitton gave Plaintiff a promotional brochure about the Prints (the "Brochure"). (A true and correct copy of the Brochure is attached as Exhibit B.)

17.    Plaintiff carefully read the Brochure. Louis Vuitton's descriptions of the Prints in the Brochure, the way the Prints were presented, and the prices being charged led Plaintiff—and everyone else—to understand that the Prints were genuine, limited-edition artworks made by Takashi Murakami.

18.    Plaintiff went home and carefully reviewed the information in the Brochure. In reliance on that information, he returned to the Boutique on January 5, 2008 to buy two Prints.

19.    Plaintiff asked to see one Print from the series "Monogram Mini Multicolore – black" and another from the series "Monogram Mini Multicolore – white".

20.    Plaintiff asked a Louis Vuitton salesperson whether Print number

— 5 —

18 was available from each series. She said it was. She brought out the Prints so Plaintiff could inspect them for physical defects.

21.     Plaintiff also asked to see the Certificates of Authenticity that were being offered with the Prints. He read the Certificates and noticed that they described the Prints as "numbered" but there was not, in fact, any numbering on the Prints. The manager of the Boutique, Erica Viruete, confirmed the defect and explained that it was a "translation error". The Boutique manager told Plaintiff that other buyers had also noticed the problem but that Louis Vuitton's management was unwilling to correct the defect. The manager assured Plaintiff that the Prints were just what Plaintiff thought they were—genuine, limited-edition Murakami artworks.

22.     Plaintiff completed his purchase of Prints, taking home one Print from the series "Monogram Mini Multicolore – black" and another from the series "Monogram Mini Multicolore – white" along with his two Certificates of Authenticity. (True and correct copies of the Certificates of Authenticity for each print are attached as Exhibits C and D.) Plaintiff paid Louis Vuitton $6,000 for each Print—a total of $12,000.

23.     On January 8, Plaintiff wrote to Murakami, describing the problem with the Certificates and asking him to address the problem because "[n]ot only is a Certificate part of the documentation of your work, but it is also a key factor in the high value of your work". (A true and correct copy of that letter is attached as Exhibit E.)

24.     When he got no response, Plaintiff sent a second letter to Murakami on January 18. This time, Plaintiff described his new concerns that the term "original artwork" on the Certificate was inaccurate, and that the Certificate lacked information about how the Print was made. Plaintiff also repeated his concern about the numbering. Plaintiff—increasingly worried about his investment in the Prints—asked Murakami to "repair the

— 6 —

1    canvasses so that they conform to the certificates". (A true and correct copy
2    of that letter is attached as Exhibit F.)

3         25.   Murakami never responded to Plaintiff's letters.

4         26.   Louis Vuitton did.

5         27.   On February 15, Plaintiff received a letter from Louis Vuitton's
6    general counsel. (A true and correct copy of that letter is attached as Exhibit
7    G.) The letter began by thanking Plaintiff for his "recent purchase of ***our***
8    ***Louis Vuitton*** MOCA Limited Edition" canvases (emphasis added). This
9    apparent admission deepened Plaintiff's suspicion that the Prints were not the
10   genuine, limited-edition Murakami artworks that Louis Vuitton had
11   represented them to be.

12        28.   Murakami's refusal to answer questions about the authenticity of
13   the Prints and the sudden involvement of Louis Vuitton's lawyers did not feel
14   right to Plaintiff, who began to seriously wonder what it was that Louis
15   Vuitton and Murakami were hiding.

16        29.   Plaintiff alleges on information and belief that:

17             a.    The Prints are not genuine, limited-edition Murakami
18                   artworks;

19             b.    The Prints are not "original artworks";

20             c.    That Murakami did not personally autograph any of the
21                   Prints or the chassis they were mounted on.

22        30.   Plaintiff alleges on information and belief that Louis Vuitton
23   failed to disclose the following material facts about the Prints prior to
24   Plaintiff's purchase:

25             a.    That the Prints were made out of material that Louis
26                   Vuitton had manufactured for use in its handbags;

27             b.    That  Murakami had no personal involvement in the
28                   manufacture of the Prints;

— 7 —

c.  That the signature was applied by someone other than Murakami;

d.  That the Prints were Louis Vuitton merchandise, not genuine, limited-edition Murakami artworks.

31.  Louis Vuitton tricked Plaintiff into believing that the Prints were genuine, limited-edition Murakami artworks. Doing so enabled Louis Vuitton to sell them at a huge profit during the Exhibition to unsuspecting museum visitors like Plaintiff.

32.  Plaintiff purchased his two Prints in reliance on Louis Vuitton's misrepresentations alleged above. The setting, presentation, and pricing of the Prints, the information in the Brochure, and the conversation with the sales staff at the Boutique each independently served to convince Plaintiff that he was buying genuine, limited-edition Murakami artworks when, in truth, he was not.

33.  Plaintiff would never have spent $12,000 on his two Prints if he had known they were not the genuine, limited-edition Murakami artworks that Louis Vuitton represented them to be.

34.  Plaintiff would never have spent $12,000 on his two Prints if Louis Vuitton had disclosed the material facts listed above that were instead omitted.

35.  On information and belief, Plaintiff alleges that in addition to Plaintiff's two Prints, Louis Vuitton sold at least 498 other Prints to people other than Plaintiff at or from the Boutique. These Prints were sold with Certificates of Authenticity that are nearly identical to those provided to Plaintiff with his two Prints. Everyone who bought Prints relied on the mistaken belief that the Prints were genuine Murakami artworks. No one would have bought them had they known the whole truth about what they were.

## CLASS ACTION ALLEGATIONS

36.    The class period starts three years before the filing date of this complaint and ends on the date of class certification.

37.    Plaintiff Clint Arthur brings all claims but the fifth on behalf of himself and the following class of persons (the "Class"):

> **"All persons who purchased Prints from Louis Vuitton at or from the Boutique."**

38.    Plaintiff Clint Arthur brings the fifth claim on behalf of himself and the following subclass of persons (the "Subclass"):

> **"All members of the Class who are 'consumers' within the meaning of Cal. Civ. Code § 1761(d)."**

39.    Specifically excluded from the Class and Subclass is Defendant, any entity in which it has a controlling interest, any of its parents, subsidiaries, affiliates and officers and directors; also the members of its immediate families, and their heirs, successors and assigns.

40.    The Class is likely to have 300–450 members. The Prints were made in five editions of 100, for a total of 500 artworks that are at issue. However, some class members bought more than one Print (for instance, Plaintiff Clint Arthur) so there will be fewer than 500 discrete class members.

41.    The Subclass is likely to have 250–400 members. Some of the members of the Class are art dealers and other commercial resellers who did not buy their Prints for personal, family or household purposes. They are excluded from the Subclass.

42.    This action may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

43.    As required by Fed. R. Civ. P. 23(a)(1), the members of the Class and Subclass are so numerous that joinder of all members is impracticable. Appropriate discovery can determine the exact number of class members and

1  Defendant can readily identify class members from its records.

2      44.   As required by Fed. R. Civ. P. 23(a)(2), the Class and the Subclass

3  each comprise a well-defined community of interest because common

4  questions of law and fact predominate over individual questions. For

5  instance, all injuries sustained by any member of the Class or Subclass arise

6  out of the singular conduct of the Defendant in selling falsely advertised and

7  documented Prints.

8      45.   Questions of law and fact common to the Class include:

9          a.   Whether the California Sale of Fine Prints Act applies to

10              Defendant's sale of Prints at the Boutique;

11          b.   Whether the Certificates of Authenticity provided to the

12              Class failed to set forth the descriptive information

13              required by the Fine Prints Act;

14          c.   Whether Defendant's violation of the Fine Prints Act was

15              willful;

16          d.   Whether Defendant's conduct is a violation of California

17              Business & Professions Code § 17200;

18          e.   Whether Defendant's conduct constitutes a breach of an

19              express warranty;

20          f.   Whether Defendants' conduct constitutes common law

21              fraud.

22      46.   Questions of law and fact common to the Subclass include:

23          a.   Whether the California Consumers Legal Remedies Act

24              applies to Defendant's sale of Prints at the Boutique;

25          b.   Whether Defendant's misrepresentations and omissions are

26              prohibited by the Consumers Legal Remedies Act.

27      47.   As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are

28  typical of the Class and Subclass.

48.    As required by Fed. R. Civ. P. 23(a)(4), Plaintiff can fairly and adequately represent the interests of the Class and Subclass. Plaintiff has no conflicts of interest with other members of the Class or Subclass. Plaintiff has retained counsel competent to prosecute this litigation.

49.    As required by Fed. R. Civ. P. 23(b)(3), a class action is superior to other methods for the fair and efficient adjudication of this controversy. Due to the similarity of injuries, common questions of law and fact predominate among the Class and Subclass. Even if any group of class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. Plaintiff's counsel foresees little difficulty in the management of this case as a class action.

50.    Alternatively, the Class and Subclass can be certified under Fed. R. Civ. P. 23(b)(1)because there is a risk of prejudice of separate actions. The complaint presents novel issues of law and separate actions could result in varying results for class members as well as incompatible standards of conduct for Defendant.

51.    Alternatively, the Class and Subclass can also be certified under Fed. R. Civ. P. 23(b)(2) to the extent that injunctive relief is sought for the classes.

52.    Plaintiff proposes that notice of this class action be provided by individual electronic or postal mailings to the class members, or by being printed in appropriate publications.

# FIRST CLAIM FOR WILLFUL VIOLATION OF THE
# CALIFORNIA SALE OF FINE PRINTS ACT
### (by plaintiff Clint Arthur, on behalf of himself and
### all members of the Class, against all defendants)

53.     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative.

54.     Defendant's sale of Prints to Plaintiff and other class members as described above constitutes a willful violation of the California Sale of Fine Prints Act (the "Fine Prints Act"). Cal. Civ. Code § 1740.

55.     The Fine Prints Act was intended to protect art buyers such as Plaintiff and the class members from being defrauded by dealers of fine art multiples by imposing disclosure obligations on the dealers.

56.     The Fine Prints Act applies to all fine art multiples worth more than $100 (exclusive of the frame) that are sold into or from California.

57.     The Fine Prints Act requires an art dealer who sells a qualifying fine art multiple to provide a certificate of authenticity that sets forth the descriptive information required by Cal. Civ. Code § 1744, and that includes the exact statement "This is to certify that all information and the statements contained herein are true and correct." Cal. Civ. Code § 1740(j).

58.     The Fine Prints Act applies to Defendant's sales of the Prints at the Boutique, including the Plaintiff's purchase.

59.     The Certificates of Authenticity that Louis Vuitton provided to Plaintiff and the class members with the Prints they purchased fail to comply with the Fine Prints Act because:

        a.     They do not adequately disclose the name of the artist (Cal. Civ. Code § 1744(a)(1));

        b.     They do not include a description of the medium or

process used in producing the multiple (Cal. Civ. Code § 1744(a)(3));

c.   They do not include a statement concerning the prior use of the master image in different mediums (Cal. Civ. Code § 1744(a)(4));

d.   They do not state the year, approximate year or period when the master image was made or when the prints were produced (Cal. Civ. Code § 1744(a)(9));

e.   They do not state whether the edition is limited, and if so, the authorized maximum number of signed or numbered prints, or both, in the edition, the authorized maximum number of unsigned or unnumbered prints, or both, in the edition, or the total size of the edition (Cal. Civ. Code §§ 1744(a)(8) and (a)(10));

f.   They do not contain the mandatory statement: "This is to certify that all information and the statements contained herein are true and correct." (Cal. Civ. Code § 1740(j));

g.   The statement appearing in the certificates that "This artwork is signed and numbered by the artist on the chassis" is patently false. (Cal. Civ. Code § 1744.7).

60.   Louis Vuitton also violated the Fine Prints Act by failing to post in a conspicuous place in the Boutique a sign that contains the message:

"California law provides for the disclosure in writing of certain information concerning prints, photographs, and sculpture casts. This information is available to you, and you may request to receive it prior to purchase." Cal. Civ. Code § 1742(c).

61.   Louis Vuitton was aware of the Fine Prints Act and its application to its sales of Prints at the Boutique, and thus its failure to

— 13 —

comply with the Fine Prints Act is willful. This inference is plausible based on the following facts:

62.    Louis Vuitton vigorously protects its intellectual-property rights through a global network of in-house and external legal counsel. Louis Vuitton has filed more than 150 lawsuits in U.S. District Courts since 1990. Louis Vuitton can be presumed to be aware of the Fine Prints Act.

63.    Louis Vuitton provided certificates of authenticity to the buyers of the Prints, suggesting that it knew of its legal obligation to do so under the Fine Prints Act.

64.    Louis Vuitton knew that if it complied with the Fine Prints Act and disclosed all the required facts, no one would buy the Prints, because it would be evident that they were not genuine, limited-edition Murakami artworks.

65.    Even though Plaintiff's two letters to Murakami did not mention the Fine Prints Act, Louis Vuitton's response offered him a refund of the price he paid for the prints plus interest—the very remedy specified in the Fine Prints Act.

## SECOND CLAIM FOR FRAUD
### (by plaintiff Clint Arthur, on behalf of himself and all members of the Class, against all defendants)

66.    Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative

67.    As alleged above, Louis Vuitton misrepresented certain material facts and omitted certain others about the authorship, source, quality and characteristics of the Prints.

68.    Defendant knew that these representations were false, or at the

— 14 —

least, had no reasonable ground to believe they were true.

69.   Defendant intended that Plaintiff and the Class rely on these misrepresentations and material omissions in order to induce them to purchase the Prints.

70.   Plaintiff and the Class actually and reasonably relied on these material misrepresentations and omissions of material fact when deciding to buy their Prints.

71.   Plaintiff and the Class were injured because what they thought were genuine, limited-edition Murakami artworks were something else entirely and worth a fraction of the purchase price.

### THIRD CLAIM FOR BREACH OF EXPRESS WARRANTY
#### (by plaintiff Clint Arthur, on behalf of himself and all members of the Class, against all defendants)

72.   Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative.

73.   The Certificates of Authenticity that Defendant furnished to Plaintiff and the Class, and other representations made by Defendant to Plaintiff and the Class concerning the Prints constitute an express warranty. Cal. Com. Code § 2313; Cal. Civ. Code § 1744.7.

74.   As set forth above, Defendant breached its warranty because, among others, the Prints are not "original artworks", are not "signed and numbered by the artist" and are not genuine, limited-edition Murakami artworks.

## FOURTH CLAIM FOR UNJUST ENRICHMENT

### (by plaintiff Clint Arthur, on behalf of himself and
### all members of the Class, against all defendants)

75.     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative.

76.     Through the actions described above, Defendant has received money belonging to Plaintiff and the Class through the sales of Prints.

77.     Defendant has reaped substantial profit by collecting and retaining revenue from Plaintiff and the Class through its sales of Prints.

78.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.

79.     Defendant should not be permitted to keep sums that Defendant has unjustly received as a result of its actions.

## FIFTH CLAIM FOR VIOLATION OF
## THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### (by plaintiff Clint Arthur, on behalf of himself and
### all members of the Subclass, against all defendants)

80.     Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative.

81.     Plaintiff and the Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

82.     The Prints are "goods" within the meaning of Cal. Civ. Code § 1761(a).

83.     In the course of its transactions with Plaintiff and the Subclass, Defendant violated the Consumers Legal Remedies Act by:

— 16 —

a.   Passing off Louis Vuitton products as Murakami artworks (Cal. Civ. Code § 1770(a)(1));

b.   Misrepresenting the certification of the Prints (Cal. Civ. Code § 1770(a)(2));

c.   Misrepresenting the connection of the Prints with Takashi Murakami (Cal. Civ. Code § 1770(a)(3));

d.   Representing that the Prints were numbered when they were not (Cal. Civ. Code § 1770(a)(5));

e.   Representing that the Prints were original artworks when they were made from materials that Louis Vuitton manufactured for use in handbags and other consumer goods (Cal. Civ. Code § 1770(a)(6));

f.   Representing that the Prints were high-quality artworks when they were made of the same grade of material as a Louis Vuitton handbag (Cal. Civ. Code § 1770(a)(7));

g.   Advertising the Prints with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)).

84.   A declaration of venue has been concurrently filed with this complaint pursuant to Cal. Civ. Code § 1780(c).

85.   Plaintiff reserves the right to ask the court for leave to amend this complaint and add a prayer for actual and punitive damages under the Consumers Legal Remedies Act.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CLAIM FOR VIOLATION OF
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200
## (FRAUDULENT PRONG)
### (by plaintiff Clint Arthur, on behalf of himself and
### all members of the Class, against all defendants)

86.   Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this claim in the alternative.

87.   Defendant's misrepresentations and material omissions to the Plaintiff and the Class regarding the nature of the Prints were fraudulent business acts within the meaning of Cal. Bus. & Prof. Code § 17200.

88.   Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's fraudulent business acts. The Plaintiff and the Class were induced to buy Prints as a direct result of their reliance on Defendant's fraudulent business acts.

## SEVENTH CLAIM FOR VIOLATION OF
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200
## (UNLAWFUL PRONG)
### (by plaintiff Clint Arthur, on behalf of himself and
### all members of the Class, against all defendants)

89.   Plaintiff repeats and incorporates by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, Plaintiff pleads this cause of action in the alternative.

90.   Defendant's sales of Prints to the Plaintiff and the Class violated the Fine Prints Act, the Consumers Legal Remedies Act, and other laws, and these violations were unlawful business acts within the meaning of Cal. Bus. & Prof. Code § 17200.

— 18 —

91.     Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's unlawful business acts. The Plaintiff and the Class were induced to buy Prints as a direct result of their reliance on Defendant's unlawful business acts.

WHEREFORE, Plaintiff, on behalf of himself and each class member, prays for relief as set forth below:

## PRAYER FOR RELIEF

ON ALL CLAIMS:

    a.    Certification of the proposed Class pursuant to Fed. R. Civ. P. 23;

    b.    Certification of the proposed Subclass pursuant to Fed. R. Civ. P. 23.

ON THE FIRST CLAIM:

    a.    A declaration that the Defendant's sale of Prints to Plaintiff and the Class violated the Fine Prints Act;

    b.    An order requiring Defendant to provide correct certificates;

    c.    Restitution of the purchase price of each Print plus interest;

    d.    Punitive damages of triple the purchase price of each Print;

    e.    Reasonable attorney's fees;

    f.    Expert witness fees;

    g.    Costs, interest, and any other relief that this Court may deem just and proper.

ON THE SECOND CLAIM:

    a.    Actual damages according to proof;

    b.    Punitive damages;

— 19 —

c.    Costs, interest, and any other relief that this Court may deem just and proper.

ON THE THIRD CLAIM:

a.    Actual damages according to proof;

b.    Costs, interest, and any other relief that this Court may deem just and proper.

ON THE FOURTH CLAIM:

a.    Restitution of money acquired unjustly;

b.    Costs, interest, and any other relief that this Court may deem just and proper.

ON THE FIFTH CLAIM:

a.    A declaration that the Defendant's sale of Prints to Plaintiff and the Subclass violated the Consumers Legal Remedies Act (CLRA);

b.    An order requiring Defendant to provide correct certificates;

c.    Restitution of money acquired in violation of the CLRA;

d.    Reasonable attorney's fees;

e.    Costs, interest, and any other relief that this Court may deem just and proper.

ON THE SIXTH CLAIM:

a.    A declaration that the Defendant's misrepresentations and omissions to Plaintiff and the Class regarding their Prints violated the fraudulent prong of Cal. Bus. & Prof. Code § 17200;

b.    An order requiring Defendant to provide correct certificates;

— 20 —

1      c.     Restitution of money acquired unlawfully;

2      d.     Costs, interest, and any other relief that this Court may deem just

3           and proper.

5   ON THE SEVENTH CLAIM:

6      a.     A declaration that the Defendant's sale of Prints to Plaintiff and

7           the Class involved unlawful acts and thus violated Cal. Bus. &

8           Prof. Code § 17200;

9      b.     An order requiring Defendant to provide correct certificates;

10     c.     Restitution of money acquired unlawfully;

11     d.     Costs, interest, and any other relief that this Court may deem just

12          and proper.

14  Dated: August 7, 2008       THE LAW OFFICE OF DANIEL E. ENGEL

16                    By:_____

17                    Daniel E. Engel

19                    BUTTERICK LAW CORPORATION

21                    By:_____

22                    Matthew Butterick

23                    Attorneys for Plaintiff

FIRST AMENDED COMPLAINT — CLASS ACTION

1

## JURY DEMAND

2     Plaintiff, individually and behalf of all others similarly situated,

3  demands a jury trial on all triable issues.

4

5  Dated: August 7, 2008                    THE LAW OFFICE OF DANIEL E. ENGEL

6

7                                            By:_____

8                                            Daniel E. Engel

9

10                                           BUTTERICK LAW CORPORATION

11

12                                           By:_____

13                                           Matthew Butterick

14                                           Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Index to Exhibits**

**Exhibit A**   Reproductions of the five series of Prints offered at the Louis Vuitton boutique at MOCA

**Exhibit B**   Promotional brochure about the Prints given to prospective purchasers at the Boutique

**Exhibit C**   Certificate of Authenticity provided to Clint Arthur for the Print "Monogram Mini Multicolore – black"

**Exhibit D**   Certificate of Authenticity provided to Clint Arthur for the Print "Monogram Mini Multicolore – white"

**Exhibit E**   January 8 letter from Clint Arthur to Takashi Murakami

**Exhibit F**   January 18 letter from Clint Arthur to Takashi Murakami

**Exhibit G**   February 15 letter from Louis Vuitton to Clint Arthur

FIRST AMENDED COMPLAINT — CLASS ACTION: EXHIBITS

# EXHIBIT A

**Exhibit A**   Reproductions of the five series of Prints offered at the Louis Vuitton boutique at MOCA





"Monogram Mini Multicolore – black"
(Plaintiff bought #18 in this series.)

"Monogram Mini Multicolore – white"
(Plaintiff bought #18 in this series.)





"Monogram Multicolore – black"

"Monogram Multicolore – white"



"Monogram Cherry"

— 24 —

EXHIBIT B

**Exhibit B**   Promotional brochure about the Prints given to prospective purchasers at the Boutique

Introductory text on pages 3–4 of the brochure:

Takashi Murakami is a committed artist whose creative and innovative style endlessly surprises us. In 2002, Marc Jacobs saw his work and fell in love with it.

This marked the beginning of a major collaboration between the artist and Louis Vuitton – a collaboration that would result in many collections bridging the divide between art and fashion.

MOCA therefore has invited Louis Vuitton to be a part of its Takashi Murakami retrospective, which thoroughly reviews the work of the artist since the 1990's.

The store presents in the form of edition works a number of Monogram canvasses revisited by Takashi Murakami.

Monogram Multicolore, in its four variations, as well as a previously unseen version of Monogram Cherry, are displayed and available. The original canvasses have been hand mounted on a 16 x 16 inch chassis signed by the artist.

In all, five versions are available for sale in a limited, numbered edition of 100 each, accompanied by a certificate of authenticity.

For the time being, these unique pieces will only be available for viewing and purchase at the Louis Vuitton store inside MOCA.

Louis Vuitton MOCA space
From October 29th, 2007
through February 11th, 2008.

— 25 —





©MURAKAMI
The Museum of Contemporary Art
Los Angeles
2007

Takashi Murakami is a committed artist whose creative and innovative style endlessly surprises us. In 2002, Marc Jacobs saw his work and fell in love with it.

This marked the beginning of a major collaboration between the artist and Louis Vuitton - a collaboration that would result in many collections bridging the divide between art and fashion.

MOCA therefore has invited Louis Vuitton to be a part of its Takashi Murakami retrospective, which thoroughly reviews the work of the artist since the 1990's.

The store presents in the form of edition works a number of Monogram canvasses revisited by Takashi Murakami·

Monogram Multicolore, in its four variations, as well as a previously unseen version of Monogram Cherry, are displayed and available. The original canvasses have been hand mounted on a 16 x 16 inch chassis signed by the artist.

In all, five versions are available for sale in a limited, numbered edition of 100 each, accompanied by a certificate of authenticity.

For the time being, these unique pieces will only be available for viewing and purchase at the Louis Vuitton store inside MOCA.

Louis Vuitton MOCA space
From October 29th, 2007
through February 11th, 2008.

## LOUIS VUITTON

MAISON FONDÉE EN 1854
PARIS



"Monogram Mini Multicolore - black"
Takashi Murakami
Editioned Canvas on Chassis
16 x 16 inches



"Monogram Mini Multicolore - white"
Takashi Murakami
Editioned Canvas on Chassis
16 x 16 inches



"Monogram Multicolore - black"
Takashi Murakami
Editioned Canvas on Chassis
16 x 16 inches



"Monogram Multicolore - white"
Takashi Murakami
Editioned Canvas on Chassis
16 x 16 inches



"Monogram Cherry"
Takashi Murakami
Editioned Canvas on Chassis
16 x 16 inches

The original canvasses are approx. 16 x 16 inches
Monogram Multicolore was created by Takashi Murakami for Louis Vuitton
Cerises © 2004 Takashi Murakami / Kaikai Kiki Co., Ltd.
© 2007 Takashi Murakami / Kaikai Kiki Co., Ltd.



# EXHIBIT C

**Exhibit C**   Certificate of Authenticity provided to Clint Arthur for the Print "Monogram Mini Multicolore – black"

The center text reads:

LOUIS VUITTON certifies that the Editioned Canvas entilted [sic] "Monogram Mini Multicolore - black" is an original artwork produced in collaboration between Louis Vuitton and artist Takashi Murakami. This artwork is signed and numbered by the artist on the chassis.

Louis Vuitton Moca Space

From October 29, 2007 through February 11, 2008


The left corner text reads:

Los Angeles, October 29th, 2007

Editioned Canvas on chassis

16 x 16 inches

N° 18/100


The text under the flower logo reads:

©MURAKAMI

The Museum of Contemporary Art

Los Angeles

2007


The text on the right edge reads:

©2007 Takashi Murakami/Kaikai Kiki Co., Ltd.

# CERTIFICATE OF AUTHENTICITY

# LOUIS VUITTON

certifies that the Editioned Canvas entitled "Monogram Mini Multicolore - black"
is an original artwork produced in collaboration between
Louis Vuitton and artist Takashi Murakami.
This artwork is signed and numbered by the artist on the chassis.

Louis Vuitton Moca Space
From October 29, 2007 through February 11, 2008

Los Angeles, October 29th, 2007

Editioned Canvas on chassis
16 x 16 inches
N° 18/100



©MURAKAMI
The Museum of Contemporary Art
Los Angeles
2007

©2007 Takashi Murakami/Kaikai Kiki Co., Ltd.

# EXHIBIT D

**Exhibit D**   Certificate of Authenticity provided to Clint Arthur for the Print
                "Monogram Mini Multicolore – white"

The center text reads:

LOUIS VUITTON certifies that the Editioned Canvas entilted [sic] "Monogram Mini Multicolore - white" is an original artwork produced in collaboration between Louis Vuitton and artist Takashi Murakami. This artwork is signed and numbered by the artist on the chassis.

Louis Vuitton Moca Space

From October 29, 2007 through February 11, 2008


The left corner text reads:

Los Angeles, October 29th, 2007

Editioned Canvas on chassis

16 x 16 inches

№ 18/100


The text under the flower logo reads:

                    ©MURAKAMI

          The Museum of Contemporary Art

                     Los Angeles

                        2007


The text on the right edge reads:

©2007 Takashi Murakami/Kaikai Kiki Co., Ltd.

CERTIFICATE OF AUTHENTICITY

# LOUIS VUITTON

certifies that the Editioned Canvas entitled "Monogram Mini Multicolore - white"
is an original artwork produced in collaboration between
Louis Vuitton and artist Takashi Murakami.
This artwork is signed and numbered by the artist on the chassis.

Louis Vuitton Moca Space
From October 29, 2007 through February 11, 2008



©MURAKAMI
The Museum of Contemporary Art
Los Angeles
2007

©2007 Takashi Murakami/Kaikai Kiki Co., Ltd.

Los Angeles, October 29th, 2007

Editioned Canvas on chassis
16 x 16 inches
N° 18/100

# EXHIBIT E

**CLINT ARTHUR · PO BOX 7902 · BEVERLY HILLS · CA · 90212**
**TEL (310)415-0450 · FAX (702)938-8618**

<u>Via Fax: 718 706 2218</u>
Mr. Takashi Murikami
Kaikai Kiki New York
5-17 46th Road
Long Island City, NY 11101

January 8, 2008

Dear Mr. Murikami,

My wife and I are art collectors, and have recently become devotees of your work.

On our first visit to ©Murikami at MOCA we purchased two offset prints, "Planet 66" and "Planet 66: Summer Vacation", which we were excited to add to our collection of works by Schnabel, Haring, Picasso, Basquiat, Lichtenstein, and Warhol. Then we researched you on the internet, and were further blown away by your social consciousness, desire to help up-and-coming artists, artistic creativity, marketing prowess, and entrepreneurial genius. Three days later we returned to MOCA and purchased two Louis Vuitton "Monogram Multicolore" Limited Edition Canvases.

During our purchase we discovered a discrepancy between the Certificates which accompany the Canvases and the actual Canvases. The Certificates state that each chasis is "Signed and Numbered", but the work itself is only Signed by you, not Numbered. I am not sure if you are aware of this discrepancy in the Certificates which accompany the "Monogram Multicolore" Editioned Canvasses, but I felt it important to bring it to your attention.

We brought this discrepancy to the attention of Erica Viruete, Store Manager of Louis Vuitton at MOCA, who explained that there was "a translation error," and that none of the "Limited Edition" pieces were numbered, despite the wording on the Certificates. She further explained that many people had brought up this issue, and that she had taken it to upper level management at Louis Vuitton, but they were unwilling to do anything to address this defect.

We have read that you place enormous importance on the accuracy of translation when documenting exhibits of your work in foreign languages, and were very surprised by this issue with the Certificates. Not only is a Certificate part of the documentation of your work, but it is also a key factor in the high value of your work, both of which elements are so essentially Murikami.

My concern is that by issuing defective Certificates for this work, your Publisher/Dealer, Louis Vuitton, may be violating your Artist's Rights, undermining the integrity of these works, and potentially reducing the future value of all your work. I hope you will take decisive action, not just because I've invested thousands of dollars in your work, but also because I believe this will engender confidence among your collectors and higher prices for all things ©Murakami.

At the Wharton School of Business I read a case study where Johnson & Johnson recalled every bottle of Tylenol in America due to sabotage with poisoned capsules, and they managed

First Amended Complaint
CV08-04731 AHM (FFMx)

page 41
Exhibit E

**CLINT ARTHUR · PO BOX 7902 · BEVERLY HILLS · CA · 90212**
**TEL (310)415-0450 · FAX (702)938-8618**

to turn it into a PR coup by emphasizing their commitment to their customers' health in the media.  Perhaps you could have a special Recall Party for this work on the closing night of the MOCA exhibit, where the owners of the 500 Limited Edition Canvases could bring them in with their Certificates and original purchase receipts to have them numbered by your Factory assistants, as a demonstration of your commitment to Murakami Collectors.  (Announcing this event might also help LV to sell out the editions.)

A Recall Party could entice a lot of news coverage as the Murakami "brand" elevates its status with the media to the level of giant global corporations like J&J, GM, and Sony by conducting "the world's first major factory recall of Fine Art."  This type of story would put you and your company on the front page of the Business Section in newspapers worldwide, as well as the Arts Section.

It would also assemble the proud new owners of up to $4,000,000.00 in recent Murakami purchases into a venue which could easily out-generate that amount with direct sales of "Special Edition" works at the event itself.  You could create and market these works as a unique way to say "Even though it was Louis Vuitton that screwed up, I'm sorry for the inconvenience of having to bring the *defective* works back in to be repaired, and my company and I stand behind every piece of work that bears our name."  Many concerts, sporting, and other cultural events generate mega revenues from onsite sales of event merchandise.  I for one would jump at the chance to purchase a Special Edition Murakami on canvas from editions of 50 for $10K, so if you had 10 sets of those available only at the Recall Party you would rake in $5,000,000.00 in one day and make a lot of your collectors very happy while simultaneously reassuring them and the world that the Murakami brand and the Kaikai Kiki factory stand in full commitment behind the highest quality standards for their work.

I really hope that you will choose to step up on the side of your Collectors and for your work, and If there is anything I can do to be of assistance to you in this matter, please do not hesitate to call on me.  In the meantime, thank you for contributing such exciting energy and work to the art world and our collection, and we look forward to hearing from you at your earliest convenience.

Sincerely,

*Clint Arthur*

PS: Please have a marketing representative of your company contact us as we wish to buy an original Murikami painting and original work by other artists in Kaikai Kiki Co., Ltd., and due to the issues we came upon in purchasing your work from LV (one of the world's top retailers) inside MOCA (a world-class art museum,) we'd feel a lot more comfortable buying Murakami/ Kaikai Kiki art  directly from the source.

Mr. Takashi Murakami, Pg. 2

# EXHIBIT F

**CLINT ARTHUR · PO BOX 7902 · BEVERLY HILLS · CA · 90212**
**TEL (310)415-0450 · FAX (702)938-8618**

Via Fax: 718 706 2218
Mr. Takashi Murikami
Kaikai Kiki New York
5-17 46th Road
Long Island City, NY 11101


January 18, 2008


Dear Mr. Murikami,

While I have been waiting for your response to my letter of January 7, I took a closer look at the Certificates which accompany the 2 "Multicolore" canvases we bought from the Louis Vuitton store inside your © Murikami exhibit at MOCA, and have discovered 2 more issues with them. For your convenience I have scanned the Certificates and circled the problem areas.

1) The Certificates state that each Editioned Canvas is an "original artwork". How can an Editioned Canvas be an original artwork? Searching the term "Original Artwork" on Google yields the result "Art work which has been originated by the artist in person, or artwork which has been finished or embellished by the artist." Is the term "Original Artwork" an appropriate description of these canvasses?

2) As mentioned in my previous letter, the Certificates state that each canvas is signed and numbered by the artist on the chassis, while they are only signed and not numbered.

3) The Certificates do not state what type of prints they are. Generally, when a Certificate accompanies a work of art it states whether the work is a lithograph, offset print, oil painting, etc.

As the certificates bear the copyright notice "Takashi Murikami/Kaikai Kiki Co., Ltd." could you please make arrangements to repair the canvasses so that they conform to the certificates? And would you be so kind as to explain what type of printing process was used to make these beautiful works of art?

Thank you!

Sincerely,

*Clint Arthur*

PS: **Please have a marketing representative of your company contact us as we wish to buy an original Murikami painting and original work by other artists in Kaikai Kiki Co., Ltd.,** and due to the issues we came upon in purchasing your work from LV (one of the world's top retailers) inside MOCA (a world-class art museum,) we'd feel a lot more comfortable buying Murakami/Kaikai Kiki art directly from the source.

**CLINT ARTHUR · PO BOX 7902 · BEVERLY HILLS · CA · 90212
TEL (310)415-0450 · FAX (702)938-8618**



Mr. Takashi Murakami, Pg. 2

# EXHIBIT G

# LOUIS VUITTON NORTH AMERICA, INC.
## LEGAL DEPARTMENT

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Mr. Clint Arthur | **FROM:** Julie Shin |
| **COMPANY:** Marsh Inc. | **DATE:** February 15, 2008 |
| **FAX NUMBER:** 702.938.8618 | **TOTAL NO. OF PAGES INCLUDING COVER:** 2 Page(s) |
| **PHONE NUMBER:** 310.415.0450 | **SENDER'S FAX NUMBER:** 646.792.6088 |
| **RE:** Purchase of Murakami Canvases from MOCA | **SENDER'S TELEPHONE NUMBER:** 212.931.2072 |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

Dear Mr. Arthur,

Please see the attached letter

Thank you and kind regards,
Julie Shin
Paralegal

PLEASE NOTE THAT THE INFORMATION CONTAINED IN THIS TELECOPY MAY BE SUBJECT TO ATTORNEY-CLIENT OR ATTORNEY WORK-PRODUCT PRIVILEGE AND IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AS RECIPIENT. IF THE READER IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY USE, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL TRANSMISSION TO US VIA THE U.S. POSTAL SERVICE. THANK YOU.

625 MADISON AVENUE, 3RD FLOOR, NEW YORK, NEW YORK 10022

# LOUIS VUITTON NORTH AMERICA, INC.

February 15, 2008

<u>*Via Federal Express and*</u>
<u>*Facsimile (702-938-8618)*</u>

Mr. Clint Arthur
1818 Kemper Street
Los Angeles, California  90065

Dear Mr. Arthur:

We would like to thank you for your recent purchase of our Louis Vuitton MOCA Limited Edition Mini Monogram White Multicolore Canvas No. 18 and Mini Monogram Black Multicolor Canvas No. 18. Due to an error in translation, the authentication certificate for the canvases indicates that the chassis are signed and numbered, when in fact, the canvases have been signed by the artist, but not numbered. As you specifically noted in your letter to Mr. Takashi Murakami dated January 8, 2008, you noticed the discrepancy between the printed certificate and the canvases when making your purchase. Notwithstanding such discrepancy, you agreed to purchase the canvases for $12,000.

Louis Vuitton offers you a sincere apology for the error, and will be pleased to send you a revised certificate. In the event that you do not consider this remedy sufficient, we will be happy to provide you with a full refund for your canvases at the price paid plus interest, provided that the canvases are authenticate and in mint condition. You may contact me within two (2) weeks of receipt of this letter if you wish to arrange this return.

Please be advised that the value and certification of authenticity of your canvases remains intact despite the typographical error on the certificate.

Please feel free to contact me at (212) 931-2167 should you wish to discuss any additional issues.

. Very truly yours,

Kathryn Kolanda
General Counsel